**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JEBRIL ABUSHAHRUR,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1686-HE** |
| | ) | |
| **MARKWAYNE MULLIN[1] et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Jebril Abushahrur, a noncitizen,[2] filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1). United States District Judge Joe Heaton referred the matter to the undersigned magistrate judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (ECF No. 3). Respondents filed a Response. (ECF No. 7). Counsel subsequently entered an appearance on Petitioner's behalf, (ECF Nos. 8 & 12), and, with leave of Court, filed a Reply, (ECF No. 15). At the Court's direction, Respondents later confirmed that Petitioner remains in custody. (ECF No. 16). The matter is at issue.

For the reasons set forth below, the undersigned recommends the Court **GRANT** Petitioner's request for habeas relief and order his release within three business days subject to an appropriate Order of Supervision (OOS).

---

[1] Fred Figueroa, Warden of the Diamondback Correctional Facility, is not a federal official, and the Government did not file a Response on his behalf. (ECF No. 7:1 n.1).

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. BACKGROUND

Petitioner is a native and citizen of Jordan who entered the United States without inspection near Lukeville, Arizona, on May 27, 2024. (ECF No. 7-7:2). After he claimed a fear of returning to Jordan, he was placed in removal proceedings. *Id.* On August 8, 2024, an Immigration Judge (IJ) ordered Petitioner released on a $6,500 bond, and he was later released subject to monitoring through U.S. Immigration and Customs Enforcement's (ICE) Alternatives to Detention (ATD) program. (ECF Nos. 7-3:1 & 7-4:2).[3] In mid-September 2025, ICE took Petitioner into custody at a scheduled ATD appointment at its Dallas Field Office, citing several ATD violations, most of them missed tracker callbacks. (ECF No. 7-4:2).

On December 2, 2025, an IJ denied Petitioner's application for asylum and ordered him removed to Jordan but granted withholding of removal to Jordan under § 241(b)(3) of the Immigration and Nationality Act. (ECF No. 7-6:1, 4). Both parties waived appeal, and the removal order became final that day. (ECF No. 7:2-3).

Because Petitioner cannot be removed to Jordan, ICE's Removal and International Operations division recommended on December 10, 2025, that he be placed on a third-country removal request list. (ECF No. 7-7:3). According to Respondents' declarant, that request "remains pending." *Id.* ICE completed a 180-day post-order custody review on or about June 10, 2026. *Id.* The declarant states that ICE has removed two Jordanian

---

[3] The record is inconsistent as to when Petitioner was released on bond. The bond form reflects that ICE accepted the bond on August 16, 2024, (ECF No. 1-1:2), while Respondents' declarant states that Petitioner was released on or about September 19, 2024, (ECF No. 7-7:2). The record also reflects that Petitioner was taken into custody on either September 15 or September 17, 2025. (ECF Nos. 7-4:2 & 15:2). These discrepancies do not affect the analysis.

citizens to "a third country" since January 1, 2026, and that, "[b]ased on the third countries' willingness to accept Jordanians," he believes Petitioner's removal to a third country is significantly likely in the reasonably foreseeable future. *Id.* The declaration does not identify any third country, any request made to a particular country on Petitioner's behalf, or any response. Petitioner remains detained at the Diamondback Correctional Facility in Watonga, Oklahoma. (ECF No. 16).[4]

## II. PETITIONER'S CLAIMS

Liberally construed, the Petition raises three grounds for relief. Petitioner contends that his detention has exceeded the presumptively reasonable six-month period recognized in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that ICE has neither attempted a third-country removal nor identified any country that will accept him. (ECF No. 1:6). Petitioner also contends that ICE's September 2025 re-detention, after he had attended his ATD check-ins while on bond, violated due process. *Id.* Petitioner seeks immediate release and an order barring Respondents from re-detaining him. (ECF No. 1:7).

Through counsel, Petitioner has since filed a Reply. (ECF No. 15). The Reply argues that the Court has jurisdiction because Petitioner challenges his continued detention rather than his removal order, that his grant of withholding of removal alone provides good reason to believe that his removal is not reasonably foreseeable, and that

---

[4] Petitioner does not appear in ICE's Online Detainee Locator System. *See* ICE Online Detainee Locator System, https://locator.ice.gov/odls/#/results (last visited Oct. 19, 2026). At the Court's direction, Respondents confirmed with ICE that Petitioner remains in custody at the Diamondback Correctional Facility. (ECF No. 16). The Court in its prior Order for Response (ECF No. 5:3 ¶ 6) directed the Respondent "to continue to update the Court throughout the pendency of the matter." The Court has received no additional updates from the Respondent and presumes Petitioner remains detained.

Respondents' vague references to removal to unidentified third countries do not rebut that showing. (ECF No. 15:5-8).

Respondents argue that the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and 1252(b)(9), that Petitioner has not shown that his removal is unlikely in the reasonably foreseeable future, that ICE properly revoked his release under 8 C.F.R. § 241.4(l)(2), and that his request to bar future re-detention is not ripe. (ECF No. 7:8-13).

## III. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88). Because Petitioner filed the Petition *pro se*, the Court construes it liberally, but it does not act as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## IV. LEGAL FRAMEWORK FOR THE DETENTION OF NONCITIZENS SUBJECT TO A FINAL ORDER OF REMOVAL

Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a). Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day period is known as the "removal period." *Id.* During the removal period, detention is mandatory. *Id.* § 1231(a)(2)(A). When the removal period lapses, the noncitizen generally must be released subject to supervision, but the

Government may continue to detain certain noncitizens, including those who are inadmissible. *See id.* § 1231(a)(3), (a)(6); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578-79 (2022). Continued detention under § 1231(a)(6) triggers the "post-removal period." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

Detention of a noncitizen subject to a final order of removal may not be indefinite. It is limited to "a period reasonably necessary to bring about that alien's removal from the United States," and it is presumptively reasonable for only six months. *Zadvydas*, 533 U.S. at 689, 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700. The burden-shifting framework that governs this inquiry is discussed below.

## V. DISCUSSION

### A. Petitioner Is Entitled to Relief Under *Zadvydas*[5]

In *Zadvydas*, the Supreme Court construed § 1231(a)(6) to contain an implicit temporal limitation. The statute authorizes detention only for "a period reasonably necessary to bring about that alien's removal from the United States," and it "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. To guide the lower courts, the

---

[5] Respondents contend that §§ 1252(g) and 1252(b)(9) strip the Court of jurisdiction because Petitioner was detained to execute his removal order. (ECF No. 7:9-11). Petitioner's *Zadvydas* claim, however, does not challenge any decision to commence proceedings, adjudicate his case, or execute his removal order. It challenges the length of his post-order detention, which is precisely the type of claim *Zadvydas* held may be brought under § 2241. *See Zadvydas*, 533 U.S. at 687-88; *Soberanes*, 388 F.3d at 1310. Respondents' own authority recognizes that a challenge to the length of confinement is not foreclosed. (ECF No. 7:11 nn.40-41). The Court therefore has jurisdiction to consider Petitioner's *Zadvydas* claim.

Supreme Court recognized six months as a presumptively reasonable period of post-removal-order detention. *Id.* at 701; *Morales-Fernandez*, 418 F.3d at 1123. That presumption "does not mean that every alien not removed must be released after six months." *Zadvydas*, 533 U.S. at 701. Rather, once the six-month period has elapsed, the inquiry proceeds in two steps. The petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Soberanes*, 388 F.3d at 1311. If the petitioner makes that showing, the burden shifts to the Government, which "must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

The petitioner's initial burden is not an onerous one. A petitioner need not "show the absence of any prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702. Whether removal is significantly likely in the reasonably foreseeable future is a "case-specific and fact driven" inquiry, *Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *6 (W.D. Okla. Jan. 26, 2026), and judges in this District have looked to whether the petitioner has demonstrated "either institutional barriers to repatriation or obstacles particular to his removal," *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025). The mere fact of delay is insufficient, but a petitioner who shows "more than just a delay in completing the removal" may satisfy his burden. *Gholestani v. U.S. Dist. Ct.*, No. CIV-25-1392-R, 2026 WL 596649, at *2 (W.D. Okla. Mar. 3, 2026). Finally, the analysis is not static. "[F]or detention to remain reasonable, as the period of prior

postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

#### 1. Petitioner Has Been Detained Beyond the Presumptively Reasonable Period

Petitioner's removal order became administratively final on December 2, 2025, when both parties waived appeal, and the removal period began that day. (ECF No. 7:2-3); *see* 8 U.S.C. § 1231(a)(1)(B). The presumptively reasonable six-month period therefore expired in early June 2026. Petitioner filed the Petition on July 6, 2026, more than seven months after his removal order became final, and he has now been detained under that order for more than ten months. (ECF No. 1). Petitioner's continued detention is therefore no longer entitled to a presumption of reasonableness. *See Gholestani v. U.S. Dist. Ct.*, No. CIV-25-1392-R, 2026 WL 1026975, at *4 (W.D. Okla. Feb. 13, 2026), *adopted*, 2026 WL 596649 (W.D. Okla. Mar. 3, 2026).

#### 2. Petitioner Has Met His Initial Burden

Petitioner has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The obstacle to his removal is not mere administrative delay. It is a legal bar. The IJ granted Petitioner withholding of removal under § 241(b)(3) of the Immigration and Nationality Act, which precludes his removal to Jordan, his only country of citizenship. (ECF No. 7-6:4). Respondents acknowledge that Petitioner "could not be removed to Jordan" and that his removal therefore depends on identifying a third country that will accept him. (ECF No. 7:3). Petitioner, in turn, asserts that in the months since his removal order became final, ICE

has neither attempted a third-country removal nor identified any country to which he might be sent. (ECF No. 1:6).

The record bears out that assertion. The only effort Respondents identify is ICE's December 10, 2025 recommendation that Petitioner be placed on a third-country removal request list, a request that, ten months later, "remains pending." (ECF No. 7-7:3). Petitioner represents, and Respondents do not dispute, that he has not been asked to meet with consular officials from any third country or to complete any paperwork for a third-country travel document. (ECF No. 15:4). Nothing in the record indicates that ICE has asked any particular country to accept Petitioner, that any country has responded, or that Petitioner has any connection to a country other than Jordan. A legal bar to removal to the only country of which Petitioner is a citizen, coupled with the absence of any identified alternative destination, is an obstacle particular to Petitioner's removal. *See Dusabe*, 2024 WL 5465749, at *3. Judges in this District have found the initial burden satisfied on comparable records. *See Gholestani*, 2026 WL 1026975, at *4-5 (petitioner could not be removed to his home country and ICE had "no substantial updates" regarding third-country removal); *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025) (respondents had "not identified any countries with which any level of progress has been made toward obtaining the country's acceptance of Petitioner"); *Hernandez-Perez v. U.S. Immigr. & Customs Enf't*, No. CIV-25-1081-J, 2026 WL 49710, at *1 (W.D. Okla. Jan. 7, 2026).

Respondents contend that Petitioner offers only speculation that ICE has forgotten him. (ECF No. 7:7, 9). That argument misstates Petitioner's burden. Petitioner need not

prove that removal is impossible, *Zadvydas*, 533 U.S. at 702, and Respondents' own evidence confirms the substance of his account: more than ten months after his removal order became final, ICE has not identified a country to which it can remove him. Petitioner has therefore carried his initial burden, and the burden shifts to Respondents.

### 3. Respondents Have Not Rebutted Petitioner's Showing

Respondents have not come forward with "evidence sufficient to rebut" Petitioner's showing. *Zadvydas*, 533 U.S. at 701. Their evidence consists of the pending list placement and their declarant's statement that ICE has removed two Jordanian citizens to an unidentified third country this year. (ECF No. 7-7:3). That evidence is insufficient to establish that Petitioner's removal is significantly likely in the reasonably foreseeable future. "A mere intent to find a third country is too speculative to permit indefinite detention or to overcome [Petitioner's] showing." *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at *10 (W.D. Okla. Oct. 15, 2025), *adopted*, 2025 WL 3006045 (W.D. Okla. Oct. 27, 2025). Removals of other nationals likewise shed little light on Petitioner's own prospects. *See Alizadeh v. Mullin*, No. CIV-26-1316-HE, 2026 WL 2388908, at *1 (W.D. Okla. Aug. 17, 2026) ("The mere fact that respondents have successfully facilitated removals of Iranian citizens to Iran or to a third country is not sufficient to rebut petitioner's showing."); *Gholestani*, 2026 WL 1026975, at *6. The declaration does not state whether either of those individuals, like Petitioner, had been granted withholding of removal, does not identify the country that accepted them, and does not suggest that the same country would accept Petitioner. The declarant's belief that removal is likely, without more, does not carry Respondents' burden. *See Hamidi v.*

*Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025) (rejecting a similar conclusory declaration), *adopted*, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025).

The passage of time reinforces this conclusion. "[T]he passage of time takes on more significance as inaction and/or lack of progress in effectuating removal is precisely what *Zadvydas* guards against." *Khaliq*, 2026 WL 196631, at *9. Petitioner has been detained for more than ten months under a final order of removal, and for more than a year in total, with no identified destination and no reported progress since December 2025. As his detention lengthens, the period that qualifies as the reasonably foreseeable future correspondingly narrows. *Zadvydas*, 533 U.S. at 701. Because Respondents have not shown that Petitioner's removal is significantly likely in the reasonably foreseeable future, his continued detention is no longer authorized by § 1231(a)(6). *See id.* at 699-700.

### B. Appropriate Remedy is Release Subject to an OOS

The appropriate remedy is release subject to an appropriate OOS. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."); *Alizadeh*, 2026 WL 2388908, at *2 (ordering release "within three (3) business days of the date of this order, subject to an appropriate order of supervision"); *Gholestani*, 2026 WL 596649, at *2.

### C. The Court Should Decline to Address Petitioner's Remaining Claim and Requests

Because the undersigned recommends granting habeas relief under *Zadvydas*, the Court should decline to address Petitioner's claim that his September 2025 re-detention

violated due process. *See Wonsehleay v. Mullin*, No. CIV-26-1226-HE, 2026 WL 2519454, at *7 (W.D. Okla. Aug. 26, 2026), *adopted*, 2026 WL 2662005 (W.D. Okla. Sept. 9, 2026); *Hamidi*, 2025 WL 3452454, at *2 n.2.[6]

Petitioner's request for an order barring Respondents from re-detaining him should be denied without prejudice. This record does not reflect a history of ICE releasing Petitioner after a failed removal effort and then re-detaining him on the same showing. Any future revocation of Petitioner's release would be governed by ICE's regulations, *see* 8 C.F.R. § 241.13(i), and a challenge to a revocation that has not occurred would require the Court to decide an abstract question before any administrative decision "has been formalized and its effects felt in a concrete way." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

## VI. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT** the Petition for habeas relief (ECF No. 1) and order Respondents to release Petitioner within three business days subject to an appropriate Order of Supervision. The undersigned further recommends that the Court deny without prejudice Petitioner's request to enjoin future re-detention, and order Respondents to certify compliance by

---

[6] Respondents argue that ICE properly revoked Petitioner's release under 8 C.F.R. § 241.4(l)(2). (ECF No. 7:11-12). That regulation governs the release of noncitizens subject to a final order of removal, and Petitioner had no final order when he was re-detained in September 2025. Petitioner had been released on bond by an IJ while his removal proceedings were pending. (ECF No. 7-3:1). Respondents also attribute to the Petition a claim that ICE violated §§ 241.4 and 241.13, citing a paragraph of the Petition that does not exist. (ECF No. 7:7 n.24). Because the undersigned does not reach Petitioner's re-detention claim, these arguments need not be resolved.

filing a status report within ten business days of the Court's order and to provide a copy of the Court's order to the Warden of the Diamondback Correctional Facility.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **October 26, 2026**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VII. STATUS OF REFERRAL

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on October 19, 2026.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE